**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARISSA SALLEE,

       Plaintiff,

       v.                                  Civ. No. 20-757 JAP/SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,[1]

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      Claimant Marissa Sallee argues that the Administrative Law Judge ("ALJ") who denied her claim for disability insurance benefits under the Social Security Act committed nine instances of miscellaneous error. On May 26, 2021, the Honorable James A. Parker referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 24. Because substantial evidence supports the decision below and Ms. Sallee identifies no harmful legal error in the proceedings, I recommend the Court DENY Plaintiff's Motion To Reverse The Administrative Law Judge (ALJ's) Unfavorable Decision Dated November 19, 2019, Or Alternatively, To Remand The Case Back To The Administrative Law Judge, Doc. 22, and affirm the decision below.[2]

---

[1] Kilolo Kijakazi was appointed the acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] I reserve discussion of the background, procedural history, and medical records relevant to this appeal for my analysis.

## APPLICABLE LAW

A.      Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)     At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)     At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)     At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Ms. Sallee raises nine points of error. I address them in turn and recommend a finding of no error with respect to each one.

1. <u>Severe impairments</u>

Ms. Sallee argues that the ALJ found "four severe impairments" and included an extensive discussion to support his findings. Doc. 23 at 5-6. This is true. But Ms. Sallee does not explain why it is significant for purposes of her appeal or what the consequences of this observation would be. Ms. Sallee does not argue any error at step two or cite any authority in support of remand on this basis.

I do not recommend reversal on point one of her brief.

2. <u>Spinal impairment</u>

After an accident in February of 2016, Ms. Sallee fractured her back in multiple places. AR 22. The ALJ extensively discussed the surgeries that followed and that Ms. Sallee had rods and screws inserted in her back for three years. *Id.* The ALJ discussed her use of a walker, her physical and occupational therapy, and her recovery. *Id.* Ms. Sallee experienced complications in 2018 with the spinal hardware and struggled with a MRSA infection, but she could walk without help at many times during this period. *Id.* The rods and screws were removed in January 2019, but due to complications and infections, she needed additional surgery in April 2019. *Id.* Ms. Sallee reported some relief with medications but had a decreased range of motion in her back. AR 23. The ALJ found that Ms. Sallee has the RFC to perform a modified range of light work with some limitations. AR 20.

Ms. Sallee acknowledges that the ALJ discussed the evidence related to her spinal impairments in great detail. Doc. 23 at 6-8. Nonetheless, she argues that "the spinal disorder consisted of numerous separate conditions," such as various different fractures and anemia. *Id.* at

8. She does not explain how the ALJ's treatment of the spinal disorder as one impairment was error, does not cite any authority in support of this proposition, and does not explain how the failure to treat every fracture as a separate impairment harmed her. *Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) (an issue is waived if not adequately supported by "developed argumentation"); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those . . . contentions that have been adequately briefed for our review."). I do not recommend reversal on this basis.

Ms. Sallee then discusses the following evidence that she "greatly suffered from March 2016 to the present":

- She was hospitalized for thirty days in February and March 2016.

- She underwent surgery on March 2, 2016 where rods and screws were inserted into her back.

- In September 2016, she was noted to have chronic back pain.

- In January 2017, her right knee pain was noted to be worse.

- She experienced debilitating pain while the rods and screws were in her back.

- In March 2018, she was noted to have a lack of range of motion, an inability to extend her back, and chronic back pain.

- In January 2019, the rods and screws were removed. An infection developed. Her PICC line was removed in March 2019 but her wound was still leaking. She experienced severe back pain.

Doc. 23 at 9-10. Ms. Sallee concludes by arguing that "the above-referenced medical records, established that the Plaintiff's spinal impairments were very persistent, intense and greatly limited the Plaintiff's actions. By failing to so find, the ALJ committed reversible error." *Id.* at 10. She does not further elaborate her argument for error or cite authority in support.

The ALJ discussed all these events very thoroughly. AR 22. The ALJ recognized that "[a]fter her injury and surgeries, the claimant reported back, neck, and rib pain following her

fall." AR 23. "Primarily, she experienced low back pain with tenderness." *Id.* "[S]itting or standing too long, walking too far or other movement exacerbated her pain. In addition, her . . . spinal hardware caused hip pain. . . . Following her hardware removal, the claimant experienced increased pain with her infection." *Id.* (citations omitted). "The claimant also had a decreased range of motion in her back, including inability to extend her back due to Harrington rod placement." *Id.* "In addition to her back pain, the claimant reported decreased strength/perceived weakness, decreased endurance, and fatigue." *Id.* "At times, the claimant exhibited slightly reduced strength in her left lower extremity, hips, and knees." *Id.*

Ms. Sallee does not identify any mistakes, misrepresentations, or omissions in the ALJ's discussion of her physical impairments. Ms. Sallee's argument amounts to a recitation of the same evidence the ALJ explicitly considered. In her opening brief, she does not acknowledge, let alone challenge, the evidence the ALJ relied on in finding her not disabled:

- By March 31, 2016, the claimant was dismissed from occupational therapy due to gains in strength, endurance, and increased independence in activities of daily living. The claimant's May 2016 x-ray showed good positioning of the instrumentation without any evidence of failure and compression deformity of L2. By June, she could stand and walk with a non-antalgic gait. The claimant testified that she pushed herself hard during her recovery and she was only in the hospital for three weeks. AR 22.

- In 2018 and 2019, she had mostly normal physical examination findings, including normal gait, balance, upper extremity strength, and spine alignment; and she had only a slight decrease in her lower extremity strength and even this improved with physical therapy. Likewise, during 2018, the claimant was able to walk with a normal, reciprocal gait without the use of an assistance device. She maintained normal balance. AR 22.

- Five months after her spinal surgery, the claimant was doing well so it was proposed that the instrumentation be removed to preserve her motion segments at other disc levels. AR 22. Prior to July of 2019, the claimant's back pain had improved and was noted to be mild and stable. She managed her back pain with rest, massage, warm compresses, and acknowledged some relief with medications. Her spinal alignment was normal. AR 23.

- With continued physical therapy, the claimant's strength and endurance increased; she had grossly normal hand strength and coordination bilaterally and had full range of motion in all extremities, and was regularly not in any acute distress. AR 23.

- Six doctors (Leah Holly, P.O.; Karl Boatman, M.D.; Scott R. Walker, M.D.; Joy Kelly, Ph.D.; Athanasios Manole, M.D.; and Kay E. Ennis, Ph.D.) concluded in 2018 that Plaintiff had work-related limitations that were not work preclusive. AR 25-27.[4]

- Plaintiff worked as a dishwasher during this period, walked to the post office every day and worked 90-minute shifts, prepared meals, did light housework, and could drive, among other things. AR 23-24.[5]

The Court does not reweigh the same evidence the ALJ considered; the Court's task is to

determine whether the ALJ's decision is supported by "more than a mere scintilla" of evidence.

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008); *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations

omitted). "It means—and means only—such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

---

[4] In reply, Ms. Sallee contends that this statement about "six doctors" overlooks the opinions of the "treating physicians" from the hospital progress notes listed on pages 6-10 of the opening brief, Doc. 23. *See* Doc. 30 at 5. Treatment and progress notes are not true medical opinions. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012). Ms. Sallee has not pointed to any true medical opinion that the ALJ failed to evaluate.

[5] In reply, Ms. Sallee refers to a progress note supposedly from Dr. Colmant dated November 28, 2017 stating that working and trying to clean house caused her back pain and spasms and hip pain. Doc. 30 at 3. Ms. Sallee does not provide a pincite and cites Exhibit 19F, which does not exist. I believe she is referring to AR 722, which contains the relevant statement about cleaning house. This statement, however, is in a note from CNP Satya Muhammad, not from a doctor.

In any event, this note reflects Ms. Sallee's own description of her symptoms rather than a provider's opinion or diagnosis. It does not undermine the sufficiency of the ALJ's conclusion that the objective medical evidence and medical opinion evidence does not support a finding of disability.

The ALJ cited more than a mere scintilla of evidence in support of a finding of nondisability related to Ms. Sallee's spinal impairments. I recommend the Court find no error and affirm the decision below.

I recommend the Court find no error with respect to point two in her brief.

3.   Medical record from September 2019

Ms. Sallee argues that the ALJ's analysis that she can perform light work with some restrictions is error because it ignores a note from September 30, 2019 that her back pain has increased. Doc. 23 at 11 (citing Exhibit 17F[6]). This medical record does reflect that Ms. Sallee told a PA-C in September 2019 that her back pain increased because she was working for her parents and that she was requesting a prescription for ibuprofen. AR 2041. PA-C Burrington refilled her ibuprofen and scheduled a follow up appointment in two months. AR 2042.

The problem with Ms. Sallee's argument, as the Commissioner points out, is that the ALJ did *not* ignore this evidence. The ALJ acknowledged that "[t]he claimant also testified that she was currently working for her parents in a janitorial-type position with ninety-minute shifts. She noted that some of her work duties did exacerbate her back pain, however, and made it harder to do things." AR 24 (citing Hearing Testimony and Exhibit 17F/1 [AR 2041]). The ALJ found that this evidence was outweighed by the other evidence discussed above in point two. In other words, Ms. Sallee's argument that the ALJ ignored relevant evidence is simply incorrect.

Ms. Sallee also argues that this progress note is a "medical opinion" that the ALJ was required to give reasons for rejecting. Doc. 11 at 23. I disagree. A progress note recording subjective symptoms from a patient is not a "medical opinion" and the ALJ was not required to

---

[6] Ms. Sallee does not provide a pincite within Exhibit 17F, but the record dated September 30, 2019 is AR 2041-42.

discuss it as such. A medical opinion is a provider's "judgment about the nature and severity of [the claimant's] physical limitations, or any information about what activities [the claimant] could still perform." *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008). A note that parrots what the patient told the provider is certainly medical evidence, but it is not a medical opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) ("The ALJ was not required to assign a weight to [the provider]'s narrative of statements relayed to him by [the claimant]."); *McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012) (not a medical opinion where the treatment notes contain reported symptoms, coping strategies, current medications, lethality and substance-abuse assessments, a list of strengths, the results of a mental status exam, diagnostic impressions and diagnoses, recommendations as to services needed, requests for new medication, a psychiatric, medical, and substance-abuse history and education and current living situation, and a treatment plan).

Because Ms. Sallee does not accurately identify any error in the ALJ's opinion, I recommend the Court reject point three of her brief.

### 4.   Bipolarity, depression, and anxiety

In point four, Ms. Sallee argues that the ALJ erred by failing to find that she has severe mental impairments of bipolarity, depression, and anxiety. Doc. 23 at 11-12. First, I note that Ms. Sallee mischaracterizes the ALJ's decision because he *did* find that Ms. Sallee has a severe impairment of bipolar disorder at step two. AR 15. Furthermore, any error with respect to a finding of non-severity of depression and anxiety is harmless because the ALJ found Ms. Sallee has other severe mental impairments. AR 15 (finding severe impairments of bipolar disorder and PTSD); *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (at step two, "a claimant need only establish, and an ALJ need only find, one severe impairment. . . . Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least

one other impairment is severe."). The ALJ did not deny Ms. Sallee's claim at step two. AR 15.

Thus, any step two error with respect to depression and anxiety is harmless. *Allman*, 813 F.3d at

1330.

Ms. Sallee also argues the ALJ "overlook[ed] the severe impairments of anxiety and

depression, and these impairments should have been considered in combination with her other

impairments." Doc. 23 at 14. It is true that "even if the ALJ determines that a claimant's

medically determinable mental impairments are 'not severe,' he must further consider and

discuss them as part of h[er] residual functional capacity (RFC) analysis at step four." *Wells v.*

*Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). But—as Ms. Sallee herself acknowledges—the

ALJ *did* discuss her anxiety and depression at length at step four. Ms. Sallee's own brief

provides an extensive summary of this discussion. Doc. 23 at 12-13 (describing, at length, the

ALJ's findings at AR 24-25). Ms. Sallee also relies on the opinion of licensed professional

clinical counselor ("LPCC") Sherilyn Oberlin. Doc. 23 at 13-14. The ALJ thoroughly discusses

and evaluates this opinion at AR 26-27. Thus, the error Ms. Sallee alleges—failing to *consider*

these mental impairments or this medical opinion throughout the disability process—is not error.

As a result, I recommend the Court reject point four of Ms. Sallee's opening brief.

    5.    <u>Medical opinions</u>

Ms. Sallee argues that the ALJ erred in his assignment of certain weights to the medical

opinion evidence. Doc. 23 at 14-15. In response, the Commissioner observes that Ms. Sallee

filed her disability applications in September 2017, and thus the significantly revised rules for

medical opinions apply to this case—including the new rule that the ALJ does not need to assign

any particular "weight" to a medical opinion. Doc. 27 at 17. Ms. Sallee concedes this point in

reply. Doc. 30 at 4.

For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. The Administration will no longer evaluate whether treating physician opinions are entitled to "controlling weight," or give "good reasons" for the weight given a treating source opinion. *Compare* 20 C.F.R. § 404.1527(c)(2) (2016) & 20 C.F.R. § 404.1527(c)(2) (2017), *with* 20 C.F.R. § 404.1520c(b). The Administration will no longer "defer or give any specific evidentiary weight" to any medical opinion. 20 C.F.R. § 404.1520c(a). The factors of supportability and consistency are the most important factors in determining the persuasiveness of a medical opinion. *Id.* § 404.1520c(b)(2). The ALJ must consider these two factors in his or her decision. *Id.* The ALJ may, but is not required to, explain how he or she considered the other remaining factors, unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. *Id.* § 404.1520c(b)(2), (3).

The Tenth Circuit has yet to address the amended regulation in a published decision. A recent unpublished decision, however, provides some guidance on how the amended regulations apply when an ALJ chooses the opinions of state agency reviewers over those of other physicians. Specifically, in *Zhu v. Commissioner, SSA*, an ALJ evaluated two treating physician opinions and determined that they were "inconsistent with clinical findings showing that [the claimant] experienced few functional deficits, her testimony describing her daily activities and capabilities, and her post-chemotherapy statements showing improving symptoms." No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021). By contrast, the ALJ found that the state agency reviewers' opinions "were supported by detailed evidentiary narratives and were consistent with the medical record and [the claimant]'s testimony." *Id.* Although the Tenth Circuit did not discuss the effect of the amended regulations, it affirmed, holding that "[t]he ALJ

complied with this regulatory framework and his evaluations of the pertinent medical opinions are supported by substantial evidence." *Id.* I agree that the amended regulations do not alter the standard of review; ultimately, the relevant question is whether the agency's decision complies with the regulation and is supported by substantial evidence.

Further, the nature of substantial-evidence review has not changed in light of the new regulation. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The decision below must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). As Judge Khalsa explained, these "requirement[s] enable[] the courts to engage in meaningful judicial review of agency decisions and thus exist[] independently of agency regulations." *Thompson v. Saul*, No. 20cv672 KK, 2021 WL 2711378, at *8 (D.N.M. July 1, 2021).

Ms. Sallee challenges the ALJ's evaluation of the state agency consultants' opinions: Leah Holly, P.O.; Karl Boatman, M.D.; Scott R. Walker, M.D.; and Joy Kelly, Ph.D. *See* Doc. 23 at 15-16. She argues that the consultants "never ex[amined] or treated the Plaintiff." *Id.* at 15. She also argues that their opinions on Ms. Sallee's functioning are "contradictory to the strong evidence" pertaining to her back pain and surgeries starting in February 2016. *Id.* This, however, amounts to an argument that the ALJ should have weighed the evidence differently. The Court cannot "reweigh the evidence nor substitute [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). Ms. Sallee does not point to any relevant evidence the ALJ ignored or mischaracterized.

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks, alterations, and citation omitted). The state agency consultants' opinions constitute substantial evidence supporting an RFC. *Cowan v. Astrue*, 552 F.3d 1182, 1189-90 (10th Cir. 2008) (ALJ entitled to base the RFC on the state agency consultant's report over contradictory medical evidence); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (the court does not "reweigh the non-examining physician's opinion and the effect of" the claimant's symptom evidence if the ALJ considered all the relevant evidence); *Weaver v. Astrue*, 353 F. App'x 151, 154-55 (10th Cir. 2009) (ALJ can rely on agency consultants' opinions if he demonstrates he evaluated all the evidence in the record). I recommend the Court decline Ms. Sallee's invitation to reweigh the state agency consultants' opinions against the medical record evidence cited under point two in Ms. Sallee's brief.

Ms. Sallee next argues that the ALJ erred with respect to his discussion of the opinion of Athanasios Manole, M.D., consulting examiner. Doc. 23 at 15-16. She observes that Dr. Manole opined as follows:

- She has decreased range of motion in her back, including inability to extend her back due to Harrington rod placement.

- She could only occasionally stoop.

- She regularly reported low back pain with tenderness.

- Her pain was aggravated by standing or walking too long or other movement.

- She would be limited to standing and/or walking for only three hours.

Doc. 23 at 16.

This falls short of an assertion of error because Dr. Manole's assessment, as Ms. Sallee

describes, was *credited* by the ALJ, AR 26, and is consistent with the RFC: Ms. Sallee is limited

to occasional overhead reaching bilaterally; she can occasionally stoop; and she can sit for six

hours but is limited to standing or walking for three hours total. AR 24. There being no identified

inconsistency between the doctor's opinion and the RFC, I discern no error from the discussion

in Ms. Sallee's brief.[7] I do not recommend reversal on this basis.

Finally, Ms. Sallee challenges the ALJ's evaluation of the opinion of LPCC Oberlin.

Doc. 23 at 16. The ALJ found that:

> The opinion that the claimant is limited in her ability to socialize is somewhat
> persuasive because it is generally consistent with the evidence in the record. For
> example, the claimant reported anxiety and depression, and she could be irritable.
> However, this opinion is somewhat vague and uses undefined terms. Moreover, it
> is not fully consistent with the evidence in the record. For example, she was also
> regularly cooperative, pleasant, and calm. The remainder of Ms. Oberlin's opinion
> is less persuasive because it is not consistent with the evidence in the record. For
> example, the claimant maintained fair to intact insight and judgment, with an
> adequate ability to make decisions and adequate awareness of problems. The
> claimant also demonstrated intact cognitive functioning with normal thought
> processes and average estimated IQ. In addition, this opinion is less persuasive
> because it was supported by treatment notes completed by the claimant, rather
> than objective observations or testing.

AR 26-27.

Of this entire paragraph of reasoning, Ms. Sallee challenges only the ALJ's statement that

"this opinion is somewhat vague and uses undefined terms." Doc. 23 at 16. Ms. Sallee argues

that LPCC Oberlin's "opinions were directly on point and very clear," and that "[a]n ALJ may

---

[7] Ms. Sallee also complains that the ALJ labeled Dr. Manole's opinion only "somewhat
persuasive," but does not point out how that harmed her. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d
1156, 1162-63 (10th Cir. 2012) ("This alleged error in the ALJ's decision did not, however,
prejudice Ms. Keyes-Zachary, because giving greater weight to Dr. Gordon's opinion would not
have helped her.").

not mischaracterize or downplay evidence to support [his] findings." *Id.* In other words, Ms. Sallee fails to challenge the ALJ's conclusions that Ms. Oberlin's opinion is inconsistent with the other medical evidence in the record, and that it was supported by notes from the claimant rather than objective observations or testing.

Regarding what Ms. Sallee does challenge—the ALJ's statement that "this opinion is somewhat vague and uses undefined terms"—I do not agree that the ALJ erred. LPCC Oberlin's opinion is not, in fact, completely clear about Ms. Sallee's work-related functioning and does not specify the degree of impairment in every domain. AR 659. Further, the ALJ did not reject the entire opinion outright on this basis; instead, the ALJ stated that the opinion is "somewhat vague"—which is true for parts of it—and that it "uses undefined terms," which is again true for parts of it.

But even if the Court agreed that the ALJ was mistaken about whether the opinion is vague, this would not end the Court's inquiry. The Court would still have to evaluate whether the ALJ's conclusions about supportability and consistency were supported by substantial evidence, as such conclusions can also justify the rejection of a medical opinion. 20 C.F.R. § 404.1520c(b); *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (ALJ may reject an opinion where it "appeared to be based on subjective complaints" rather than objective findings, and where it was inconsistent other evidence in the record). It is the plaintiff's duty to identify the evidence in the record showing that the ALJ's decision is not supported by substantial evidence. *See Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (rejecting claimant's assertion of error where she failed to explain how evidence undercut ALJ's decision); *see also St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002) ("In civil cases such as

this, the party challenging the action below bears the burden of establishing that the error prejudiced that party."). Ms. Sallee has not done so in this case.

The closest Ms. Sallee comes to doing so is in her reply. There, she emphasizes the nature of the treatment relationship with LPCC Oberlin, notes there were more than 50 visits, and emphasizes the treatment records that support the opinion. Doc. 30 at 4-5. The problem with this argument is that the ALJ *may*, but is not required to, explain how he or she considered factors outside supportability and consistency, such as the nature of the treatment relationship. 20 C.F.R. § 404.1520c(b)(2), (3). Regardless of whether other factors exist, the two most important factors are supportability and consistency. *Id.* § 404.1520c(b)(2). Further, even in reply, Ms. Sallee does not acknowledge or challenge the ALJ's finding that Ms. Oberlin's opinion is inconsistent with other medical evidence in the record, and that it was supported by notes from the claimant rather than objective observations or testing.[8]

The Court must affirm the decision below if the ALJ's findings about the consistency and supportability of the opinion are supported by substantial evidence. The ALJ discussed the following evidence in support of the mental limitations in the RFC that is inconsistent with LPCC Oberlin's opinion:

- Ms. Sallee's anxiety could disrupt her concentration, but she was able to pay attention as long as she needed to. AR 24 (citing Exhibit 3E/8).

- She was able to follow instructions very well. AR 24 (citing Exhibit 3E/6).

- She maintained fair attention and concentration during appointments. AR 24 (citing Exhibits 7F/5; 8F/4; 9F/12).

- She had an intact memory. AR 24 (citing Exhibits 7F/5; 8F/4; 13F/34; 17F/2).

---

[8] In fact, Ms. Sallee's citations to the treatment notes only highlight that the ALJ was correct: the notes rely heavily on her self-reports. Doc. 30 at 4 ("Client . . . states she feels so overwhelmed . . . . Client . . . states that she feels hopeless . . . .").

- She demonstrated intact cognitive functioning with normal thought processes and average estimated IQ. AR 24 (citing 3F/30; 7F/5; 9F/2; 16F/240).

- She was regularly alert and oriented. AR 24 (citing 1F/21; 7F/4; 9F/12; 15F/39; 16F/240).

- She maintained fair to intact insight and judgment, with an adequate ability to make decisions and adequate awareness of problems. AR 25 (citing Exhibits 7F/5; 9F/2; 16F/240; 17F/2).

- She could handle change in routine okay, as long as she did not become stressed or angry. AR 25 (citing Exhibits 3E/7; 7E/7).

- During appointments, she was cooperative, pleasant, and calm. AR 25 (citing Exhibits 1F/22; 3F/28; 7F/1, 5; 9F/12; 13F/365; 15F/101).

- She maintained an appropriate mood and affect. AR 25 (citing Exhibits 1F/22; 9F/2; 17F/2).

- She generally got along well with authority figures, but this would vary with her mood. AR 25 (citing Exhibit 3E/7).

- She obtained a normal score on her mini-mental status examination. AR 25 (citing Exhibit 7F/6).

- When interacting with an unknown examiner, she maintained normal behavior and cognitive function during her physical consultative examination. AR 25 (citing Exhibit 8F/6).

- She testified she managed her anxiety and panic attacks with medication, and she also attended therapy which helped. AR 25.

Substantial evidence is not a high bar. Ms. Sallee does not challenge any of the evidence the ALJ relied on in reaching the mental RFC and rejecting LPCC Oberlin's opinion. In sum, I find the ALJ's decision to be supported by substantial evidence and recommend that the Court reject point five of Ms. Sallee's opening brief.

6.      Subjective symptom evidence

Ms. Sallee argues in point six that "[t]he ALJ failed to adequately explain his challenging the credibility of the Plaintiff's Complaint." Doc. 23 at 16.[9] The ALJs' assessments of subjective symptom complaints "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). While the Tenth Circuit has "insisted on objectively reasonable explanation over mere intuition," it has "not reduced [subjective symptom] evaluations to formulaic expressions." *Id.* at 909. The courts do not "'require a formalistic factor-by-factor recitation of the evidence.'" *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The ALJ need only "set[] forth the specific evidence he relies on in evaluating the claimant's" subjective symptom evidence. *Id.*

In *White v. Barnhart*, the Tenth Circuit held that the ALJ's discussion "properly grounded his credibility assessment" because he "based his judgment on his review of the medical records as well as [the claimant's] own account of her daily activities, finding both to be inconsistent with her complaints of disabling pain." 287 F.3d at 909. Ms. Sallee complains that "[t]he ALJ provided no specific reasons for his finding of the Plaintiff's lack of credibility, with no supporting evidence in the record," Doc. 23 at 18, but this is simply incorrect. The ALJ provided a thorough discussion of the medical evidence, AR 22-25, and Ms. Sallee has not pointed to any relevant evidence the ALJ ignored or mischaracterized. And, like in *White*, the ALJ relied on Ms. Sallee's own account of her daily activities:

> [D]uring September of 2019, the claimant reported that she had been independent with gait and activities of daily living without an assistive device, including

---

[9] The Social Security Administration eliminated the use of the term "credibility" in order to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." SSR 16-3p, 2017 WL 5180304, at *2. The substantive instructions to ALJs remain the same, so case law interpreting SSR 96-7p is still relevant. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016); *Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017).

> bathing and showering. She regularly noted that she could perform personal care activities, albeit with some pain. In addition, she would prepare meals and do light housekeeping, including laundry, taking out the trash, and dishes. The claimant also went shopping and to church. Moreover, during the period at issue, the claimant worked doing food preparation and as a dishwasher, and she remained able to drive.

AR 13 (citations omitted). Ms. Sallee does not even acknowledge these findings, much less mount a specific, developed challenge to them. Her contention is that the ALJ should have weighed the evidence differently. Doc. 23 at 18. Because that does not amount to an argument that the ALJ's decision lacks substantial evidence, and because I find substantial evidence does exist, I recommend the Court affirm the decision below in this respect.

       7.    <u>Combined effect of impairments</u>

Ms. Sallee argues that an ALJ must consider the combined effects of all the claimant's impairments, both severe and non-severe, throughout the disability determination process. Doc. 23 at 19. She argues that the combined effect of her spinal disorder, PTSD, bipolarity, anxiety, and depression should have resulted in a finding that she cannot pursue substantial gainful activity. *Id.* I observe that the ALJ discussed all these impairments at length. AR 21-27. The ALJ specifically stated "the limiting effects of all the claimant's impairments, even those that are not severe, were considered when determining the claimant's residual functional capacity below." AR 18. While this appears to be boilerplate, it does distinguish this case from Ms. Sallee's cited authority, *Langley v. Barnhart*, in which "the ALJ's decision does not indicate that he considered the cumulative effect of claimant's impairments." 373 F.3d 1116, 1123 (10th Cir. 2004); *see* Doc. 23 at 19.

Further, the Tenth Circuit in a published opinion has relied on such boilerplate. *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("The ALJ stated that he considered all of her symptoms in assessing her RFC. Our general practice, which we see no reason to depart from

here, is to take a lower tribunal at its word when it declares that it has considered a matter. Furthermore, the ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all of Ms. Flaherty's impairments." (citations and internal alterations omitted)). Here, too, Ms. Sallee does not point to any reason to believe the ALJ did not do as he said he did. Her argument amounts to a contention that the Court should replace the ALJ's analysis with its own. The Court, however, is prohibited from conducting an ad hoc review of the ALJ's decision. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." (internal quotation marks omitted)). Instead, it considers whether substantial evidence exists to support the decision. The Court concludes it does.

In reply, Ms. Sallee argues that "there is nothing in the record which shows that the ALJ specifically considered the issue as to how the Plaintiff's physical health issues exacerbated her mental impairments." Doc. 30 at 5. This is, again, untrue and contradicted by the ALJ's explicit words. The ALJ noted "the claimant's mental health impairments caused limitations in her functional abilities." AR 24. The ALJ echoed words that Ms. Sallee uses throughout her brief that "[t]he claimant reported feeling overwhelmed and she had difficulty managing stressful situations." AR 24-25. The fact that the ALJ did not fully credit these assertions does not mean he did not fulfill his duty to *consider* them.

I recommend the Court reject point seven of Ms. Sallee's opening brief.

8.   Step-five finding

Ms. Sallee makes a conclusory argument, with no citations to authority or the record and no elaboration, that the Commissioner did not meet her burden at step five to prove there is a substantial number of jobs available to Ms. Sallee in the national economy. Doc. 23 at 19. While the Commissioner might bear the burden at step five of the administrative process, as the party

with the burden of proof in *this* proceeding, Ms. Sallee is required to present a reasoned argument to the Court. *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014); *Murrell v. Shalala*, 43 F.3d 1388, 1389 & n.2 (10th Cir. 1994); *Mays v. Colvin*, 739 F.3d 569, 575-76 (10th Cir. 2014) ("[The plaintiff] does not explain why this omission is significant and we will not construct an argument for her."); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (declining to consider issues not adequately briefed for review). Ms. Sallee fails to do so.

I recommend the Court reject point eight of Ms. Sallee's opening brief.

9.      Closed period of disability

Finally, Ms. Sallee contends that the ALJ should have considered whether she was entitled to a closed period of disability between March 2016 and July 2018. Doc. 23 at 19-20. Ms. Sallee argues the evidence shows she was disabled while the rods were in her back. *Id.* Ms. Sallee summarizes, at length, the evidence that is favorable to a disability finding. But she does not argue the ALJ overlooked this evidence or mischaracterized any evidence. In point two, I found that substantial evidence supported the ALJ's discussion of her physical impairments at all times material to the appeal. That necessarily means substantial evidence supports the ALJ's discussion of the period between March 2016 and July 2018. Indeed, I highlighted the evidence between March 2016 and July 2018, including six doctors' opinions, that the ALJ cited as substantial evidence in support of the RFC. Ms. Sallee did not address or challenge that evidence at any point in her opening brief.

The ALJ cited more than a mere scintilla of evidence in support of a finding of nondisability at all material times, including while Ms. Sallee had rods in her back. I recommend the Court find no error and affirm the decision below.

## <u>CONCLUSION</u>

Based on the foregoing, I recommend denying Plaintiff's Motion To Reverse The Administrative Law Judge (ALJ's) Unfavorable Decision Dated November 19, 2019, Or Alternatively, To Remand The Case Back To The Administrative Law Judge (Doc. 22), and affirming the decision below.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**